STUART, Justice.
Dawn Elaine Patterson and her husband Brooks Patterson appeal the judgment entered by the Jefferson Circuit Court dismissing their claims against Consolidated Aluminum Corporation (“CAC”) and its corporate owner Lonza America, Inc. (“Lonza”), as being barred by the applicable statute of limitations. We affirm.
I.
On September 11, 2008, Dawn Patterson was diagnosed with malignant mesothelio-ma. On August 13, 2009, the Pattersons initiated this legal action, alleging that Dawn’s mesothelioma was caused by exposure to asbestos. The Pattersons did not allege that Dawn had been directly exposed to materials containing asbestos at her home or workplace; rather, they alleged that Dawn was a victim of secondary exposure to asbestos as a result of her close contact with her father, Jerry Dison, and her grandfather, Melvin Lester, who they alleged had worked around materials containing asbestos for many years and who had allegedly brought home the asbestos dust that ultimately caused Dawn’s mesothelioma. The Pattersons accordingly named Dison’s and Lester’s employers as defendants in their complaint, as well as various manufacturers of asbestos-containing products that Dison and Lester were alleged to have been exposed to in the course of their employment. The complaint also asserted claims against unknown defendants that had not yet been identified. This appeal concerns only Dawn’s claims against the employers of her father, Dison.
Among the defendants named in the Pattersons’ complaint were “Phelps-Dodge Corporation a/k/a Phelps-Dodge Industries a/k/a Phelps-Dodge Wire & Cable Group” (hereinafter referred to as “Phelps-Dodge”), and Nichols Wire, Inc. Dison began working for Phelps-Dodge in Florence in 1965, and, although he did not thereafter change jobs, the facility in Florence at which he worked changed ownership and names several times over the years, and, when he retired in 2004, he was formally employed by Nichols Wire. On December 29, 2009, the Pattersons submitted Dison’s Social Security employment records to the trial court establishing that Dison had been employed by Phelps-Dodge[1] from 1965 to 1971; by CAC from 1971 to 1983;[2] by Nichols-Homeshield, Inc., from 1983 to 1990;[3] and by Nichols Wire from 1991 to 2004. Both Dawn and Dison confirmed the accuracy of these records in depositions given in February 2010. When, during her deposition, an attorney representing a defendant that is not a party to this appeal asked Dawn where her father had worked, she responded that “[h]e worked for Nichols Wire, which before it was Nichols Wire, it was Consolidated Aluminum [or CAC] and it was also called Phelps Dodge.” Dison likewise confirmed in his deposition that he had worked for CAC from 1971 to 1983.
On February 22, 2010, the Pattersons received a response to discovery requests *745 submitted to Nichols Wire. In response to an interrogatory regarding its corporate history, Nichols Wire stated that it was formed as a corporate entity in 1991 after which it purchased the Florence facility where Dison worked and other assets from Niehols-Homeshield, which, “upon information and belief,” was a subsidiary of Quanex Corporation. On February 24, 2010, the Pattersons filed an amended complaint adding Quanex as a defendant “individually and as successor in interest to Niehols-Homeshield.” They also added as a defendant in that amended complaint Ormet Corporation “individually and as successor in interest to [CAC].”[4]
The Pattersons allege that they thereafter served discovery requests upon Quanex and that the responses they received from Quanex on January 19, 2011, alerted them for the first time that CAC and Lonza were potentially liable parties.[5] Accordingly, on April 20, 2011, the Patter-sons moved the trial court to allow them to amend their complaint to substitute CAC and Lonza for fictitiously described defendants. The trial court granted their request, and on May 9, 2011, the Pattersons filed their second amended complaint, identifying CAC and Lonza as defendants for the first time.
On August 15, 2011, CAC and Lonza moved the trial court to dismiss the Pat-tersons’ claims against them on the ground that those claims were barred by the applicable statute of limitations. Specifically, they argued that the Pattersons’ claims accrued on September 11, 2008 — when Dawn was diagnosed with mesothelioma— and that, pursuant to § 6-2-38, Ala.Code 1975, the Pattersons accordingly had two years from that date, or until September 11, 2010, to state claims against any parties alleged to be responsible for their injuries. The second amended complaint naming CAC and Lonza as defendants was filed on May 9, 2011 — nearly eight months after that period had expired — and, CAC and Lonza argued, the Pattersons were not entitled to substitute CAC and Lonza in the place of fictitiously named defendants in the Pattersons’ earlier timely filed complaint because, CAC and Lonza alleged, the Pattersons had not acted with due diligence to identify fictitiously named defendants or to amend their complaint after fictitiously named defendants were identified.
The Pattersons filed a response to CAC and Lonza’s motion to dismiss, denying that they had not acted with due diligence and arguing that the trial court properly allowed their second amended complaint pursuant to Rules 9(h) and 15(c), Ala. R. Civ. P. Rule 9(h) states:
“When a party is ignorant of the name of an opposing party and so alleges in the party’s pleading, the opposing party may be designated by any name, and when that party’s true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.”
Moreover, pursuant to Rule 15(c), an amendment of a complaint relates back to the date of the original complaint if the provisions of Rule 9(h) are satisfied. See Committee Comments on 1973 Adoption of Rule 15, Ala. R. Civ. P. (“An amendment *746 substituting a real party for a fictitious party relates back provided that the provisions of Rule 9(h) are satisfied.”).
On November 15, 2011, the trial court conducted a hearing on CAC and Lonza’s motion to dismiss, and, on December 20, 2011, the trial court entered an order granting the motion, stating:
“The defendants [CAC] and [Lonza] have filed a motion to dismiss, arguing that the claims stated against them in this case are barred by the statute of limitations. The court, having reviewed the motion and exhibits submitted by the defendants, having examined the briefs and exhibits of counsel for [the Pattersons] and these defendants regarding this motion and having heard oral argument of the motion from counsel for the parties involved, treats the motion as a motion for summary judgment, since the motion and responses rely on matters outside the pleadings. Having reviewed the issue, the court hereby grants the motion to dismiss, which is treated as a motion for summary judgment, and dismisses the claims of the [the Pattersons] against the defendants [CAC] and [Lonza] with prejudice.”
The trial court further certified its judgment as final pursuant to Rule 54(b), Ala. R. Civ. P., and, on January 31, 2012, the Pattersons filed their notice of appeal to this Court.
II.
The trial court properly treated CAC and Lonza’s motion to dismiss as a summary-judgment motion because evidence outside the pleadings was considered. We therefore review the judgment entered disposing of that motion pursuant to the standard of review we apply to summary judgments. We described that standard in Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004):
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12.”
III.
The Pattersons argue that the trial court erred by entering a judgment in favor of CAC and Lonza on a statute-of-limitations ground because, the Pattersons contend, the claims they asserted in their second amended complaint were timely in light of the relation-back principles of Rules 9(h) and 15(c). This Court discussed those principles in Ex parte Griffin, 4 So.3d 430, 436 (Ala.2008), stating:
“This Court has held with regard to Rule 9(h) and the relation-back principles of Rule 15(c), Ala. R. Civ. P., that the plaintiff must state a cause of action against the fictitiously named party in the body of the original complaint; that *747 the plaintiffs ignorance of the true identity of the party intended to be sued is ‘in the sense of having no knowledge’ of the party’s identity at the time the complaint was filed; and that the plaintiff must have used due diligence in attempting to discover the identity of the fictitiously named party. Columbia Eng’g Int’l Ltd. v. Espey, 429 So.2d 955, 958 (Ala.1983). To be entitled to the benefit of the relation-back principles, the plaintiff must act with due diligence to ascertain the fictitiously named defendant’s true name and to promptly amend the complaint to correctly identify that defendant. The due-diligence standard, as stated in Davis v. Mims, 510 So.2d 227, 229 (Ala.1987), ‘is whether the plaintiff knew, or should have known or was on notice, that the substituted defendants were in fact the parties described fictitiously.’ ”
Thus, in order for the relation-back doctrine to apply and justify the substitution of a defendant for a fictitiously named party after the limitations period has run, the plaintiff seeking such substitution must establish: (1) that it stated a cause of action against the defendant in the body of the original complaint, albeit identifying the party only as a fictitiously named party; (2) that it was ignorant of the defendant’s identity at the time the original complaint was filed; (8) that it exercised due diligence to identify the fictitiously named party; and (4) that it promptly amended its complaint once it knew the identity of the fictitiously named party. Id. The absence of evidence establishing any one of these factors is sufficient to support a trial court’s judgment disallowing the outside-the-limitations-period substitution.
In this case, the Pattersons argue that there is substantial evidence establishing each of these four factors. CAC and Lonza do not challenge the Pattersons’ assertion that they were ignorant of CAC and Lonza’s identity at the time they filed their original complaint but contest the Pattersons’ arguments with regard to each of the other three factors. Because we agree that the Pattersons did not move promptly to amend their complaint to substitute CAC and Lonza as defendants after they knew or should have known that CAC and Lonza were the parties described fictitiously in the original complaint, we limit our analysis to that factor.
The Pattersons argue that, at the time they filed their original complaint, they reasonably believed that Nichols Wire bore responsibility for Dison’s, and by extension Dawn’s, exposure to asbestos because Nichols Wire had become Dison’s final employer in 1991 when it acquired the facility he worked at, and, the Pattersons state, they believed that at the same time it acquired all liabilities for harm done to people on those premises by the previous employers. They further state that they did not become aware that other parties were potentially liable for Dawn’s injuries until receiving the discovery responses of Nichols Wire that implicated Quanex. Two days after receiving those responses, they moved to amend their complaint to add Quanex as a defendant and, again they state, they believed at that time that they had named all liable parties. Only when Quanex subsequently provided its responses to discovery in January 2011, the Pat-tersons argue, did they learn that CAC and Lonza might have some liability, and they therefore moved to amend their complaint to substitute them as defendants. Even though they were aware of CAC’s existence before that time, the Pattersons argue, they were unaware of its potential liability. Thus, they argue, they exercised due diligence at all times, and the substitutions should be permitted under Rule 9(h) and Rule 15(c).
*748 However, the Pattersons’ claims are belied by the facts in the record. First, although the Pattersons state that they believed that Nichols Wire had acquired all liability for asbestos exposure at Di-son’s workplace when it purchased the facility and that they accordingly “had no reason to suspect that there even were any other liable premises defendants [or] to search for any,” this argument ignores the fact that the original complaint also named Dison’s first employer at the Florence facility, Phelps-Dodge, as a premises-liability defendant based on its control of that facility. Pattersons’ brief, p. 21. The Pat-tersons were on notice by at least December 2009 that CAC and/or its corporate parent Lonza had employed Dison at the same facility for several years because at that time Dison’s Social Security records identifying CAC and Lonza were submitted into the record, yet the Pattersons made no effort at that time to substitute CAC or Lonza as a defendant even though the basis for finding them liable would have been the same as the basis for finding Phelps-Dodge, who was named as a defendant in the original complaint, liable.
Second, when the Pattersons filed their first amended complaint in February 2010 adding Quanex as a defendant (only two days after receiving the discovery first identifying Quanex), they also asserted a new claim against a previously unidentified company, Ormet Corporation, stating:
“Ormet Corporation, individually and as successor in interest to [CAC], produced, distributed, manufactured, installed, insured, owned, and/or maintained or controlled the premises, facilities and worksites containing asbestos-containing products and/or materials, including their own asbestos-containing products and/or materials and asbestos-containing products and/or materials produced or manufactured by others.”
(Emphasis added.) Thus, in February 2010, the Pattersons apparently had some knowledge of potential liability on the part of CAC because they asserted a claim against Ormet based on its status as successor in interest to CAC. A claim asserted against CAC and or Lonza at that time would have been timely; however, such a claim was not made in spite of the apparent knowledge of the identity of CAC and at least a partial understanding of its role. No “fair-minded person in the exercise of impartial judgment” could reasonably conclude that the Pattersons did not have any knowledge of CAC’s potential liability at that time. West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Yet the Pattersons nevertheless waited until May 2011 — approximately 15 months after they should have known that CAC and Lonza were entities to be substituted for fictitiously named defendants and 8 months after the statute of limitations had expired- — to seek to substitute CAC and Lonza as defendants. We accordingly conclude that the Pattersons are not entitled to the benefit of the relation-back doctrine because they did not exercise due diligence to amend their complaint promptly once two of the fictitiously named parties in that complaint were identified as CAC and Lonza. The trial court accordingly did not err in entering a judgment in favor of CAC and Lonza. See Ex parte Hensel Phelps Constr. Co., 7 So.3d 999, 1004 (Ala.2008) (“[The plaintiff] plainly failed to comply with the rules governing fictitious-party practice in his overall delay in ascertaining [the petitioner’s] identity and in waiting seven months after obtaining knowledge of the identity of [the petitioner] as a defendant to amend his complaint.” (emphasis added)); and Sherrin v. Bose, 608 So.2d 364, 366 (Ala.1992) (affirming judgment for the defendant on statute-of-limitations ground where the *749 plaintiff “waited almost 10 months before amending the complaint” after defendant was identified (emphasis added)).
IV.
The Pattersons initiated a lawsuit on August 13, 2009, against various companies that manufactured or utilized products containing asbestos, approximately 11 months after Dawn was diagnosed with mesothelioma on September 11, 2008. That lawsuit did not specifically identify CAC or Lonza as defendants; however, on May 9, 2011, the Pattersons sought to amend their complaint to substitute them for fictitiously named defendants. The trial court initially allowed the amendment but, in response to a motion filed by CAC and Lonza, subsequently held that the Pat-tersons’ claims against them were barred by the statute of limitations. We agree; because the Pattersons did not promptly move to amend their complaint to substitute CAC and Lonza as defendants after learning of their identity and potential liability, they are not entitled to the benefit of the relation-back doctrine. The judgment entered by the trial court in favor of CAC and Lonza is accordingly affirmed.
AFFIRMED.
MALONE, C.J., and PARKER, SHAW, and WISE, JJ., concur.

. These records indicate that the proper formal name of the entity that employed Dison during this time was "Phelps-Dodge Aluminum Products Corporation.”

. The Social Security records for this period also refer to Lonza, because Dison's employer was formally recorded as "Consolidated Aluminum Corp., Alusuise Lonza America Infc].”

.Dison also received wages from Nichols-Homeshield Ltd. Partnership in 1985 and 1986.

. It is not clear what information led the Pattersons to state a claim against Ormet, or when or how they acquired that information.

. Those responses are not part of the record, although the Pattersons have attached an excerpt from those responses to their appellate brief. However, evidence attached to or otherwise described in an appellate brief but "not made a part of the record on appeal" is not properly before this Court. Spradlin v. Drummond, Inc., 548 So.2d 1002, 1005 (Ala.1989).