Rel: March 6, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

## SC-2025-0632

_____

## Ex parte Affinity Hospital, LLC d/b/a Grandview Medical Center

## PETITION FOR WRIT OF MANDAMUS

## (In re: The Estate of Charles E. Milner, by and through its Administrator, Mary E. Milner

## v.

## Community Health Systems Professional Services Corporation, LLC d/b/a Grandview Medical Center)

## (Jefferson Circuit Court: CV-24-901348)

COOK, Justice.

This mandamus petition arises from a wrongful-death action in which the original complaint named the wrong defendant and the plaintiff failed to substitute the proper defendant in place of a fictitiously named defendant before the two-year period for bringing the action expired. On April 1, 2024, Mary E. Milner, the administrator of the estate of her deceased husband, Charles E. Milner, commenced in the Jefferson Circuit Court a wrongful-death action against "Community Health Systems Professional Services Corporation, d/b/a Grandview Medical Center" and three fictitiously named defendants, including one that she alleged "owned or operated the hospitals or clinics" named in her complaint. Mary alleged that Charles died as a result of their negligence.

In its answer to Mary's complaint, the named defendant identified its correct legal name as CHSPSC, LLC ("CHSPSC"), and expressly denied that it "does business as" Grandview Medical Center. It also pointed out that, "upon information and publicly available records, Affinity Hospital, LLC is the licensee for [Grandview Medical Center]."

Later, at a status conference, CHSPSC again advised the trial court and Mary that it "does not do business as" Grandview Medical Center. Despite that information, Mary persisted in her belief that CHSPSC was

the proper entity, claiming her own research supported that conclusion.

More than four months after CHSPSC filed its initial answer and approximately five months after she filed her original complaint, Mary amended her complaint. In the amended complaint, Mary kept the initial parties, including all fictitiously named defendants, but added CHSPSC, identifying it by its correct legal name, and Grandview Medical Center as separate defendants to the action.

About a month later, Mary filed her <u>second</u> amended complaint in which she made "Affinity Hospital, LLC d/b/a Grandview Medical Center" ("Affinity") a defendant to her wrongful-death lawsuit. Affinity moved to dismiss Mary's action against it, arguing, among other things, that her wrongful-death claim was time-barred under Alabama's Wrongful Death Act, § 6-5-410, Ala. Code 1975. It also argued that her second amended complaint could not relate back to the date she filed her original complaint under Rule 9(h) and Rule 15(c)(4), Ala. R. Civ. P., because, it asserted, she had not exercised due diligence in her attempts to ascertain its identity.

In response, Mary argued that, because she had exercised due diligence in discovering Affinity's legal identity as the licensee of

3

Grandview Medical Center, under Rule 9(h) and Rule 15(c)(4), her second amended complaint related back to the date of her original complaint.

The trial court denied Affinity's motion after concluding that Mary had exercised due diligence in ascertaining Affinity's legal identity. Affinity thereafter petitioned this Court for a writ of mandamus directing the trial court to vacate its order denying its motion to dismiss and to instead enter an order dismissing Mary's wrongful-death claim against it for the reasons set forth in its motion. For the reasons explained below, we grant the petition and issue the writ.

Facts and Procedural History

I. Charles's Death and Mary's Attempted Settlement

In January 2022, Mary's husband, Charles, was admitted to Grandview Medical Center. While there, Charles allegedly developed pressure ulcers and associated illnesses. He was eventually discharged to a rehabilitation facility but was later admitted to UAB Hospital.

While Charles was at UAB Hospital, medical staff discovered another large pressure ulcer on Charles's body. Despite attempts to treat it, the wound did not heal. Charles passed away on April 3, 2022.

After Charles passed away, Mary hired a lawyer who sent a

settlement demand to (1) "Risk Management" at Grandview Medical Center's mailing address, (2) "Community Health Systems" located at 4000 Meridian Boulevard in Franklin, Tennessee, and (3) the lawyers representing CHSPSC. Although the parties agreed to attend mediation, one week before that mediation was scheduled to take place, CHSPSC's counsel canceled it.

## II. Mary's Wrongful-Death Action and CHSPSC's Answer

As a result, on April 1, 2024, Mary commenced the present action against "Community Health Systems Professional Services Corporation, d/b/a Grandview Medical Center"; "Fictitious Defendant A," whom Mary alleged "owned or operated the hospitals and clinics" named in her complaint; and "Fictitious Defendants B and C." According to Mary, after she filed suit, she conducted two searches on the Alabama Secretary of State's website to determine who owned Grandview Medical Center. She first searched for "Grandview Medical Center," which led her to "Grandview Medical Group Research LLC," with a principal address of 4000 Meridian Boulevard in Franklin, Tennessee. She also searched for "Community Health Systems," which revealed that "CHS Professional Services Corporation" was located at the same Franklin, Tennessee,

5

address. Mary then searched Grandview Medical Center's website for additional information about its legal name, but, according to Mary, that search yielded no meaningful results.

She also conducted some basic internet searches, which led her to three news articles that further led her to believe that Grandview Medical Center is owned and controlled by "Community Health Systems." Those articles included (1) a 2021 news article that stated that Grandview Medical Center is a "subsidiary of Community Health Systems"; (2) a 2013 news article stating that "Trinity Medical Center" will be rebranded as "Grandview Medical Center" and that contained a quote from the "CEO of Trinity's parent company, Community Health Systems"; and (3) a news article noting that Grandview Medical Center's facility "was sold to Community Health Systems in 2013."

On May 6, 2024, CHSPSC filed its answer to Mary's complaint in which it asserted that it had been erroneously named as "Community Health Services Professional Services Corporation, LLC d/b/a Grandview Medical Center" in Mary's original complaint and that its true legal name is "CHSPSC, LLC." CHSPSC further asserted that "it does not do business as Grandview Medical Center, and is not the [owner] for that

hospital," but that "publicly available records" showed that "Affinity Hospital, LLC is the licensee for the hospital." (Emphasis added.)

After CHSPSC filed its answer, no further developments occurred in the case for four months.

### III. The September 2024 Status Conference and Mary's First Amended Complaint

On September 16, 2024, the trial court held a status conference during which, it is undisputed, CHSPSC again advised Mary that it was not the owner of Grandview Medical Center. While the transcript of that status conference was not included in the materials before us, Affinity alleges that CHSPSC also reiterated that "Affinity owned and operated the hospital."

Although Mary claims that after the status conference she performed additional research that, she said, showed that "[CHSPSC], LLC and/or Community Health Systems Professional Services Corporation, LLC were the owners" of Grandview Medical Center, Answer at 7, she has not provided this Court with any documentation supporting that assertion.

On September 23, 2024, over four and a half months after CHSPSC filed its answer and seven days after she was told again that CHSPSC

7

did not own Grandview Medical Center, Mary amended her complaint. In her first amended complaint, Mary kept "Community Health Systems Professional Services Corporation, d/b/a Grandview Medical Center" and the fictitiously named defendants as defendants to the action but added "CHSPSC, LLC" and "Grandview Medical Center" as defendants. No other defendant was substituted for a fictitiously named defendant or added to the first amended complaint.

That same day, Mary, for the first time, sent interrogatories and requests for production to CHSPSC and Grandview Medical Center in which she asked for more information about the legal name and business relationships of Grandview Medical Center. It does not appear from the materials before us that those defendants responded to those discovery requests or that Mary otherwise attempted to ascertain the identity of Grandview Medical Center's true owner at that time.

On October 16, 2024, CHSPSC moved to dismiss Mary's amended complaint for lack of personal jurisdiction. In support of its motion, CHSPSC attached an affidavit of Russell Baldwin, the Vice President and Chief Litigation Counsel for CHSPSC. Baldwin stated in his affidavit that CHSPSC does not own or operate any hospitals, including

8

Grandview Medical Center, and does not manage, control, or direct the operations of Grandview Medical Center.

Mary's counsel thereafter "began asking other colleagues whether they knew the legal name for Grandview Medical Center and eventually came to learn that [it] may now be owned by Affinity Hospital." Answer at 7. Mary's counsel then searched the Alabama Secretary of State's website for Affinity and noted that it shared the same Franklin, Tennessee, address as "Grandview Medical Group Research LLC" and "CHSPSC, LLC."

### IV. Mary's Second Amended Complaint Adding Affinity and Affinity's Motion to Dismiss

Mary then filed a second amended complaint[1] on October 27, 2024, in which she finally made Affinity a defendant to her wrongful-death action, but she did not substitute it for "Fictitious Defendant A," which she had alleged "owned and operated the hospitals and clinics" named in her complaint. According to the materials before us, Affinity was represented by the same law firm as CHSPSC. She also kept "Grandview

---

[1]Mary mistakenly titled this second amended complaint as "Plaintiff's 3rd Amended Complaint."

Medical Center" and "Fictitious Defendants A, B and C" as defendants. However, she removed "Community Health Systems Professional Services Corporation, d/b/a Grandview Medical Center" and "CHSPSC, LLC" from her action.[2]

Following additional proceedings not pertinent to the present mandamus petition, on April 10, 2025, Affinity moved to dismiss Mary's wrongful-death claim against it. Affinity argued, among other things, that Mary's wrongful-death claim against it was time-barred by § 6-5-410(d) and that her second amended complaint could not relate back to the date of her original complaint under Rule 9(h) and Rule 15(c)(4) because, it said, Mary "did not exercise the mandatory due diligence [in] determin[ing] [Affinity's] identity prior to the filing of the complaint, or seek to timely amend [her complaint] after irrefutably being made aware of [Affinity's] identity." In support of its motion to dismiss, Affinity attached a series of public records that, it said, clearly showed that it

---

[2]The materials before us indicate that, around that time, the trial court granted CHSPSC's motion to dismiss and, thus, that it was officially removed as a defendant to the action at that time.

10

operates Grandview Medical Center.[3]

In her response in opposition to Affinity's motion, Mary argued that her second amended complaint related back to her original complaint under Rule 9(h) and Rule 15(c)(4) because, she said, she had exercised due diligence in her attempts to ascertain the true legal name of Grandview Medical Center's owner before adding Affinity to her second amended complaint. In particular, Mary alleged that she had exercised due diligence (1) by engaging in presuit correspondence with CHSPSC's counsel who did not, at that time, deny that CHSPSC was affiliated with Grandview Medical Center, (2) by searching for Grandview Medical Center's owner on the Alabama Secretary of State's website, (3) by reviewing news and website articles about Grandview Medical Center and who owned it, and (4) by engaging in discovery in an attempt to

---

[3]Those documents included: (1) a copy of a 2022 license from the Alabama State Board of Health permitting "Affinity Hospital, LLC to operate Grandview Medical Center"; (2) a screenshot of the Centers for Medicare & Medicaid Services Provider Registry website listing "Affinity Hospital, LLC" as "d/b/a Grandview Medical Center"; (3) a screenshot of the Jefferson County Real Property Ownership Records database showing Affinity as the "owner" of Grandview Medical Center; and (4) a screenshot of the Jefferson County Department of Health's website listing "Affinity Hospital, LLC" as "d/b/a Grandview Medical Center."

further ascertain the legal identity of Grandview Medical Center's true owner.

In support of her response, Mary attached copies of various documents that, she said, demonstrated her efforts.[4] According to Mary, despite her best efforts, she "was not provided with obvious information that identified Grandview Medical Center as Affinity Hospital, LLC," and "[n]one of the medical records, correspondences nor internet research revealed Affinity Hospital as the [licensee] of Grandview." Answer at 13.

## V. The Trial Court's Judgment

Following a hearing, on July 29, 2025, the trial court denied Affinity's motion to dismiss. In support of its decision, the trial court

---

[4]Those documents included: (1) documents reflecting two searches on the Alabama Secretary of State's website for "Grandview Medical Group Research LLC" with a principal address of 4000 Meridian Boulevard in Franklin, Tennessee, and for "CHS Professional Services Corporation," located at the same Franklin, Tennessee, address; (2) various pages of Grandview Medical Center's website without information pertaining to its legal name; (3) a 2021 news article that stated that Grandview Medical Center is a "subsidiary of Community Health Systems"; (4) a 2013 news article stating that "Trinity Medical Center" will be rebranded as "Grandview Medical Center," which contained a quote from the "CEO of Trinity's parent company, Community Health Systems"; and (5) an undated news article noting that Grandview Medical Center's facility "was sold to Community Health Systems in 2013."

reasoned that Mary "acted with due diligence to ascertain the true legal name of Defendant Affinity Hospital, LLC," and, thus, that her "[Second] Amended Complaint related back to the original complaint pursuant to Rule 15(c) and Rule 9(h) of the <u>Alabama Rules of Civil Procedure</u>."

On August 14, 2025, Affinity filed a motion to alter, amend, or vacate the trial court's order. That same day, the trial court denied the postjudgment motion. This petition for a writ of mandamus followed, and we subsequently ordered answers and briefs.

## Standard of Review

> "'"'A writ of mandamus is an extraordinary remedy, and it "will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court."'" <u>Ex parte Monsanto Co.</u>, 862 So. 2d 595, 604 (Ala. 2003) (quoting <u>Ex parte Butts</u>, 775 So. 2d 173, 176 (Ala. 2000), quoting in turn <u>Ex parte United Serv. Stations, Inc.</u>, 628 So. 2d 501, 503 (Ala. 1993)).'"

<u>Ex parte Profit Boost Mktg., Inc.</u>, 254 So. 3d 862, 866 (Ala. 2017) (quoting <u>Ex parte Novus Utils,, Inc.</u>, 85 So. 3d 988, 995 (Ala. 2011)). "The question whether a plaintiff failed to act with due diligence in identifying a fictitiously named defendant as the party the plaintiff intended to sue is reviewable by a petition for a writ of mandamus." <u>Ex parte Bowman</u>, 986

So. 2d 1152, 1156 (Ala. 2007) (citing Ex parte Snow, 764 So. 2d 531 (Ala. 1999)).

## Discussion

The key issue in this case is whether Mary's second amended complaint, filed on October 27, 2024, nearly seven months after the expiration of the two-year period for bringing a wrongful-death action, see § 6-5-410(d), related back to the filing of her original complaint on April 1, 2024. Among other things, Affinity argues that Mary's second amended complaint cannot relate back to the date she filed her original complaint under Rule 9(h) and Rule 15(c)(4) because, it says, she did not exercise "due diligence" in determining Affinity's identity as the fictitiously named defendant that owns Grandview Medical Center both before and after the filing of her original complaint. It is for this reason that Affinity contends that it is entitled to a writ of mandamus directing the trial court to dismiss her wrongful-death claim against it.

As an initial matter, we note that Alabama's Wrongful Death Act provides that a wrongful-death action "must be commenced within two years from and after the death of the testator or intestate." § 6-5-410(d). Our Court has explained that "'[t]his two year period is part of the

14

substantive cause of action and is not to be treated as a statute of limitations.'" Pollard v. H.C. P'ship, 309 So. 3d 1189, 1194 (Ala. 2020) (quoting Downtown Nursing Home, Inc. v. Pool, 375 So. 2d 465, 466 (Ala. 1979)). Rather, it is to be treated as being "'"of the essence of the cause of action, to be disclosed by averment and proof."'" Id. at 1194 (quoting Wood v. Wayman, 47 So. 3d 1212, 1218 (Ala. 2010), quoting in turn Parker v. Fies & Sons, 243 Ala. 348, 350, 10 So. 2d 13, 15 (1942) (overruled on other grounds by King v. National Spa & Pool Inst., Inc., 607 So. 2d 1241 (Ala. 1992))).

Our Court has recognized that the relation-back doctrine applies to wrongful-death claims. This is so because "the relation-back doctrine 'simply recognizes and clarifies what has already occurred' in that application of the doctrine does not extend the limitations period but merely allows substitution of a party in a suit otherwise timely filed." Pollard, 309 So. 3d at 1194. Consistent with this principle, "'Rule 9(h) and Rule 15(c), Ala. R. Civ. P., allow a plaintiff to avoid the bar of a statute of limitations by fictitiously naming defendants for which actual parties can be later substituted.'" Ex parte Chemical Lime of Alabama, Inc., 916 So. 2d 594, 597 (Ala. 2005) (quoting Fulmer v. Clark Equip. Co.,

654 So. 2d 45, 46 (Ala. 1995)).

> Fictitious-party practice is governed by Rule 9(h), which provides:
>
> "When a party is ignorant of the name of an opposing party and so alleges in the party's pleading, the opposing party may be designated by any name, and when that party's true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name."

Under Rule 15(c)(4), an amendment of a pleading relates back "to the date of the original pleading when ... relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h)."

> Our Court has explained that, for an amended complaint that identifies a fictitiously named defendant to relate back to the date of the original complaint, the plaintiff must establish:
>
> "(1) that it stated a cause of action against the defendant in the body of the original complaint, albeit identifying the party only as a fictitiously named party; (2) that it was ignorant of the defendant's identity at the time the original complaint was filed; (3) that it exercised due diligence to identify the fictitiously named party; and (4) that it promptly amended its complaint once it knew the identity of the fictitiously named party. [Ex parte Griffin, 4 So. 3d 430, 436 (Ala. 2008).] The absence of evidence establishing any one of these factors is sufficient to support a trial court's judgment disallowing the outside-the-limitations-period substitution."

Patterson v. Consolidated Aluminum Corp., 101 So. 3d 743, 747 (Ala. 2012).

16

Here, the parties specifically dispute whether Mary exercised due diligence in ascertaining the true identity of Affinity, which appeared to be named in each of Mary's complaints as a fictitiously named defendant that owns Grandview Medical Center. If we determine that Mary did not exercise due diligence in ascertaining Affinity's identity in this case, we need not address whether the other factors listed above are met. See generally Patterson, 101 So. 3d at 747 ("The absence of evidence establishing any one of the[] factors [pertaining to relation-back principles] is sufficient to support a trial court's judgment disallowing the outside-the-limitations-period substitution.").

Our Court has previously stated that, "to invoke the relation-back principle of Rule 15(c), a plaintiff, after filing suit, must proceed in a reasonably diligent manner to determine the true identity of a fictitiously named defendant and to amend his complaint accordingly." Ex parte FMC Corp., 599 So. 2d 592, 593-94 (Ala. 1992). The test for determining whether a party exercised due diligence in attempting to ascertain the identities of the fictitiously named defendants is "'whether the plaintiff knew, or should have known or was on notice, that the substituted defendants were in fact the parties described fictitiously.'" Ex parte

17

Griffin, 4 So. 3d 430, 436 (Ala. 2008) (quoting Davis v. Mims, 510 So. 2d 227, 229 (Ala. 1987)). "It is incumbent upon the plaintiff to exercise due diligence both before and after the filing of the complaint." Ex parte Nicholson Mfg. Ltd., 182 So. 3d 510, 514 (Ala. 2015) (emphasis omitted).

"'Diligence' is a relative term, and what is due diligence must be determined by the circumstances of each case." Brown & Flowers v. Central of Georgia Ry., 197 Ala. 71, 75, 72 So. 366, 367 (1916). Our Court has previously explained that "'"[d]ue diligence means ordinary, rather than extraordinary, diligence ...."'" Ex parte Thompson, [Ms. SC-2025-0127, Sep. 26, 2025] ___ So. 3d ___, ___ (Ala. 2025) (citations omitted).

In Crowl v. Kayo Oil Co., 848 So. 2d 930, 939-41 (Ala. 2002), our Court addressed what constituted insufficient due diligence in circumstances similar to those presented in the present case. In Crowl, the plaintiff sued Conoco, Inc., and fictitiously named defendants after suffering an injury at a gas station with Conoco signage, but he made no meaningful effort to determine who owned or operated the station. Although the plaintiff served interrogatories on Conoco contemporaneously with his complaint, which were never answered, he did nothing else to identify the proper defendant. Id. at 939-40. Our Court

18

held that this did not constitute due diligence, because the plaintiff could have learned the identity of the owner of the station -- Kayo Oil Co. -- "from public records or simply by going to the service station where he was injured and asking the manager who owned or leased the property" rather than just relying on the gas station's signage. Crowl, 848 So. 2d at 940.

By contrast, in Oliver v. Woodward, 824 So. 2d 693 (Ala. 2001), the plaintiff, at the time of filing suit, knew from her medical records that a specific doctor was one of several doctors present when the treatment that injured her was authorized. Id. at 698. However, she did not know which doctor had authorized the treatment until after the limitations period had expired. Id. at 699. At the outset, the plaintiff undertook a series of depositions, including that of the doctor at issue, who denied responsibility. Id. She did not learn that he had authorized the treatment until she deposed a radiologist identifying him as the doctor in charge. Id. Our Court held that the plaintiff's amended complaint related back because she had diligently attempted to verify which doctor had authorized the harmful treatment and could not have substituted the doctor at issue earlier without a reasonable factual basis. Id.

19

In sum, "[i]n a case involving fictitiously named defendants, the answer to [the] question [whether an amendment relates back to the filing of the original complaint as permitted by Rules 9(h) and 15(c)(4), Ala. R. Civ. P.,] depends upon the plaintiff's conduct." Ex parte Mobile Infirmary Ass'n, 74 So. 3d 424, 428 (Ala. 2011). Once the identity of the fictitiously named defendant has been verified, "the plaintiff must substitute the named defendant for the fictitious party within a reasonable time after determining the defendant's true identity." Crawford v. Sundback, 678 So. 2d 1057, 1060 (Ala. 1996).

Turning to the case now before us, Charles passed away on April 3, 2022. Because Mary's wrongful-death claim is subject to the two-year period set forth in § 6-5-410(d), Mary's second amended complaint naming Affinity as a defendant, filed on October 27, 2024, must relate back to her original complaint filed on April 1, 2024, for her wrongful-death claim against it to survive. As the legal principles above make clear, for her second amended complaint to relate back to her original complaint under Rule 9(h) and Rule 15(c)(4), there must be evidence indicating that Mary exercised due diligence in ascertaining Affinity's identity as the fictitiously named defendant that owns Grandview

Medical Center before and after the filing of her original complaint.

Here, the materials before us indicate that, after Charles died, Mary's counsel engaged in settlement negotiations with CHSPSC's counsel that ultimately went nowhere. According to Mary, at no point during those discussions did CHSPSC's counsel deny that it owned Grandview Medical Center or inform her that Affinity was the owner.

However, when CHSPSC filed its answer to Mary's original complaint on May 6, 2024, it explicitly stated that "it <u>does not</u> do business as Grandview Medical Center, and is <u>not the [owner] for that hospital</u>." It also stated that, "upon information and <u>publicly available records, Affinity Hospital, LLC is the licensee for the hospital</u>." (Emphasis added.) Mary does not refute that CHSPSC provided this information in its answer to her original complaint.

Our Court has previously recognized that a plaintiff's failure to take action in ascertaining the true identity of a defendant once he or she has been put on notice that the wrong defendant has been named constitutes a lack of due diligence. See <u>Jones v. Resorcon, Inc.</u>, 604 So. 2d 370, 373 (Ala. 1992) (explaining that plaintiff's counsel was on notice that the defendant was not the proper party, in part because the defendant filed

21

an answer stating it was not the manufacturer of the product at issue);

see also Ex parte Tate & Lyle Sucralose, Inc., 81 So. 3d 1217, 1222 (Ala. 2011) (holding that a plaintiff's failure to act upon a motion to dismiss -- which stated that the named defendant was not the proper party -- constituted a lack of due diligence because the "attorney was in fact privy to information at that point that put him on notice that [the named defendant] might not be the [proper defendant]"). Here, the undisputed evidence shows that Mary was put "on notice" of Affinity's identity as early as May 2024 -- nearly six months before she filed her second amended complaint making Affinity a defendant to her wrongful-death action.

Despite that notice, Mary took no action to amend her complaint to make Affinity a defendant at that time. In fact, nothing was done in the case for over four months after CHSPSC filed its answer.

Additionally, when the trial court held a status conference for the case in September 2024, during which it is undisputed that CHSPSC again advised Mary that it was not the owner of Grandview Medical Center, Mary still did not amend her complaint to substitute Affinity for the fictitiously named defendant that owns Grandview Medical Center.

22

Instead, she amended her complaint to add only CHSPSC and "Grandview Medical Center" as defendants to the action.

Although she apparently sent interrogatories and requests for production to CHSPSC and Grandview Medical Center that same day inquiring about the legal name and business relationships of Grandview Medical Center, there is no indication that she received responses to those discovery requests. There is also no indication that she attempted to follow up with those defendants regarding their discovery responses.

Our Court has previously recognized that the conducting of formal or informal discovery can be evidence of a plaintiff's due diligence in attempting to ascertain the correct identity of a defendant; however, we have also held that it may not "necessarily prove due diligence." Ex parte Tate & Lyle Sucralose, 81 So. 3d at 1221. For example, in Ex parte Mobile Infirmary Ass'n, supra, our Court found that the plaintiff did not exercise due diligence despite the plaintiff's use of both formal and informal discovery to ascertain the identity of the defendants. There, the plaintiff's attorney searched the Alabama Secretary of State's website, informally contacted the parent company's attorney, and served unspecific interrogatories in an effort to ascertain the hospital owner's proper

identity, but the plaintiff did not amend the complaint until after the period for bringing the action had expired. 74 So. 3d at 430-32. Our Court concluded, among other things, that those steps were insufficient to establish due diligence. Id.

By contrast, in Ex parte Russell, 314 So. 3d 192, 202-04 (Ala. 2020), our Court held that the plaintiff exercised due diligence when she pursued both formal and informal discovery aimed at identifying the proper defendants. There were two examples involving two different substituted defendants. First, this Court held that the trial court could have reasonably concluded that the plaintiff "had diligently pursued discovery targeted toward identifying [a nurse] but had been hindered by [the hospital]'s failure to timely disclose a requested record that would have clearly revealed a connection …." Id. at 202-03. Second, this Court noted that, "[d]espite th[e plaintiff's] interrogatories and repeated informal requests by [the plaintiff]'s counsel for more specific information," an emergency-room secretary's interaction with the decedent was not revealed until after the period for bringing the action had expired. Id. at 204.

Here, there is no indication that, when she did not obtain any

24

responses to her discovery requests inquiring about Grandview Medical Center's affiliations and business relationships, Mary took any additional steps to ascertain the true identity of Grandview Medical Center's owner. See Crowl, 848 So. 2d at 940 (explaining that a plaintiff cannot rely on a defendant's failure to answer interrogatories to justify lack of knowledge of the identity of the proper defendant, because "Rule 9(h) places the duty upon the plaintiff to exercise 'due diligence' to identify a fictitiously named defendant"). Thus, we do not believe that her attempt to conduct formal discovery to ascertain the identity of Grandview Medical Center's owner constituted due diligence, particularly when considered in conjunction with the information that she had already received from CHSPSC in its answer to her original complaint indicating that publicly available records showed that Affinity was the actual licensee of Grandview Medical Center.

Finally, although Mary eventually filed her second amended complaint and made Affinity a defendant to her action, this occurred nearly six months after CHSPSC first put her on notice that it was not the owner of Grandview Medical Center and that public records indicated that Affinity was Grandview Medical Center's licensee. It was also over

25

a month after CHSPSC again told her it was not the owner of Grandview Medical Center during a status conference in the case. Thus, despite being "on notice" that Affinity is the licensee of Grandview Medical Center for nearly six months after she filed her original complaint, Mary did not attempt to make Affinity a defendant to her action "within a reasonable time after determining [its] true identity." Crawford, 678 So. 2d at 1060. The materials before us also indicate that she did not actually substitute Affinity for "Fictitious Defendant A," the fictitiously named defendant that Mary had alleged "owned and operated the hospitals and clinics" -- i.e., Grandview Medical Center -- and had named in her original complaint as required by Rule 9(h).

Mary attempts to get around this by asserting in her answer to Affinity's petition that she "was not provided with obvious information that identified Grandview Medical Center as Affinity Hospital, LLC," and that "[n]one of the medical records, correspondences nor internet research revealed Affinity Hospital as the [licensee] of Grandview." Answer at 13. Mary further contends that she conducted additional research to determine the owners of Grandview Medical Center and had confirmed "that [CHSPSC,] and/or Community Health Systems

26

Professional Corporation, LLC were the owners." Id. at 7. However, the only evidence she presents in support of her alleged due diligence consists of presuit emails with counsel for CHSPSC, search results from the Alabama Secretary of State's website, various pages from Grandview Medical Center's website that do not list ownership information, and three news articles of questionable relevance -- one undated, one from over 4 years ago, and one from over 12 years ago -- that suggest that Grandview Medical Center was a subsidiary of CHSPSC.

Much of this evidence was directly refuted by the evidence that Affinity submitted in support of its motion to dismiss, including (1) a copy of a 2022 license from the Alabama State Board of Health[5] permitting "Affinity Hospital, LLC to operate Grandview Medical Center"; (2) a screenshot of the Centers for Medicare & Medicaid Services Provider Registry website listing "Affinity Hospital, LLC" as "d/b/a Grandview Medical Center"; (3) a screenshot of the Jefferson County Real Property Ownership Records database showing Affinity as the "licensee" of

---

[5]The Alabama State Board of Health was the licensing agency for hospitals at the time this action was commenced. See § 22-2-1, Ala. Code 1975.

27

Grandview Medical Center; and (4) a screenshot of the Jefferson County Department of Health's website listing "Affinity Hospital, LLC" as "d/b/a Grandview Medical Center."[6] Moreover, Affinity provided evidence indicating "that the identity of [Affinity] could have been ascertained by requesting and reviewing the publicly available property-tax records." This further refutes Mary's argument that she exercised due diligence. See Ex parte Lucas, 212 So. 3d 921, 930 (Ala. 2016) (citing Crowl, 848 So. 2d at 937).

Based on the materials before this Court, Affinity has demonstrated that Mary failed to exercise due diligence in ascertaining Affinity's identity both before and after the filing of her original complaint. See Patterson, 101 So. 3d at 747 ("The absence of evidence

---

[6]Practically speaking, one would also imagine that a large hospital like Grandview Medical Center would have been involved in previous litigation. Indeed, a search of the name "Grandview Medical Center" on a legal-research platform yields pertinent results that would have been discoverable during the due-diligence period (cases decided before May 6, 2024). For instance, our Court previously decided Ex parte Affinity Hospital, LLC, 373 So. 3d 180, 181 (Ala. 2022), in which the first words of the opinion state: "Affinity Hospital, LLC ('Affinity'), d/b/a Grandview Medical Center ...." See also Ex parte Johnson & Johnson, 330 So. 3d 480, 485 n.2 (Ala. 2020) (noting in a footnote that a respondent/plaintiff in that suit was "Affinity Hospital, LLC, doing business as Grandview Medical Center in Jefferson County").

establishing any one of the[] factors [pertaining to relation-back principles] is sufficient to support a trial court's judgment disallowing the outside-the-limitations-period substitution."). As a result, Mary's second amended complaint cannot relate back to the date of the filing of her original complaint under Rule 9(h) and Rule 15(c)(4), and Affinity is, therefore, entitled to mandamus relief.

## Conclusion

For the reasons stated above, Affinity has demonstrated a clear legal right to the relief it is seeking. Accordingly, we grant the petition for a writ of mandamus and issue the writ directing the trial court to vacate its order denying Affinity's motion to dismiss and to, instead, enter an order granting that motion.[7]

---

[7]Because the resolution of this issue is dispositive, we pretermit discussion of any other issues raised by the parties. See Ex parte Board of Water & Sewer Comm'rs of City of Mobile, 272 So. 3d 635, 638 (Ala. 2018) (finding petitioner's second argument to be dispositive, thus pretermitting discussion of the petitioner's first argument). See also Jackson Hosp. & Clinic, Inc. v. Murphy, 343 So. 3d 490, 498 n.3 (Ala. 2021) (stating that the Court would pretermit discussion of remaining issues in light of the dispositive nature of another issue). However, we emphasize that the parties in the present case rested their arguments here on the application of Rule 9(h) and Rule 15(c)(4), Ala. R. Civ. P. Our decision today should not be understood as suggesting that a more persuasive argument could not have been made under the provisions of

PETITION GRANTED; WRIT ISSUED.

Stewart, C.J., and Shaw, Wise, Bryan, Sellers, Mendheim, McCool, and Parker, JJ., concur.

---

Rule 15(c)(3), which excludes fictitious-party pleading and, instead, applies the relation-back doctrine to "a plaintiff's attempt to amend in order to correctly identify a defendant included in or contemplated by the plaintiffs' original complaint." Ex parte Profit Boost Mktg., Inc., 254 So. 3d 862, 870 (Ala. 2017).